Argued January 23, modified February 20, rehearing denied March 20, 1917.

# CARO v. WOLLENBERG.*

### (163 Pac. 94.)

**Mortgages—Rights of Mortgagee—Reimbursement for Services.**

1. A mortgagee in possession of mortgaged realty cannot collect pay for services rendered by him in caring for or improving the property.

**Mortgages—Redemption—Interest—Pleading.**

2. In an action to have a deed declared to be a mortgage and to fix amount required to redeem, a complainant, alleging that mortgagee took possession of the premises under obligation to apply rents due upon the mortgage indebtedness, concluded plaintiffs as to amount of interest and entitles defendant to interest computed at rate stipulated in mortgage.

**Appeal and Error—Review—Necessity of Appeal.**

3. Where a litigant did not appeal from decree of trial court allowing insufficient amount of interest, the same cannot be modified in his favor on appeal.

**Interest—Mortgages—Amount Required to Redeem—Compound Interest.**

4. Mortgagee on redemption is not entitled to interest upon interest, and hence is not entitled to interest on amount of delinquent interest due when he took possession.

**Mortgages—Rights of Mortgagee—Reimbursements for Permanent Improvement.**

5. A mortgagee in possession of mortgaged premises is bound to keep the property in as good condition as when he took possession and is entitled to reimbursement for expenses thus incurred upon redemption, but he is not entitled to any reimbursement for permanent improvements made by him without consent or direction of mortgagor, although such improvements run with the land.

> [As to duties and liabilities of mortgagee in possession, see note in 4 Am. St. Rep. 69.]

**Mortgages—Rights of Mortgagee—Reimbursements for Permanent Improvements.**

6. Under the rule that a mortgagee who acted in good faith and believed himself to be owner in fee is entitled to reimbursement for permanent improvements which increase value of the property, a mortgagee, who in his answer alleges facts showing that his claim was

---

*On right and duty of mortgagee in possession as to repairs or improvements of property, see note in 49 L. R. A. (N. S.) 122.

The question, a receipt as evidence of payment as against third party, is discussed in a note in 29 L. R. A. 737. Also, on party's books of account as evidence in his own favor, see comprehensive note in 52 L. R. A. 558.                REPORTER.

under the mortgage, cannot claim reimbursement for permanent improvements.

### Mortgages—Rights of Mortgagee.

7. Under Section 335, L. O. L., declaring that a real estate mortgage shall not be deemed a conveyance so as to enable the mortgagee to recover possession without foreclosure, knowledge is imputed to mortgagee that under statutes and established law of the state he cannot acquire title without foreclosure or absolute conveyance.

### Mortgages—Conveyance in Lieu of Foreclosure—Requisites.

8. A conveyance of mortgaged realty by the mortgagor to the mortgagee to dispense with foreclosure and vest title in mortgagee must be a deed executed with statutory formalities and without any condition permitting redemption.

### Mortgages—Deed as Mortgage—Right of Grantee—Reimbursement for Improvements.

9. A mortgagee, to avoid expense of foreclosure, agreed with mortgagor to extend time of redemption for period of four years, in consideration of execution of absolute deed. *Held*, such deed was in effect a mortgage, and mortgagee not entitled to recover reimbursements for fireproof vaults and other improvements made on property while in possession.

### Evidence—Admissibility—Writings of Deceased Persons.

10. Under Section 790, L. O. L., providing that entries. or writings of a deceased person made against his interest may be admissible in evidence, entries by plumber in his books of account showing amount due him from patrons are entries in favor of his interest and not admissible.

### Evidence—Documentary Evidence—Copies—Writings of Deceased Persons.

11. An unverified transcript of books of account of deceased person showing declarations in favor of his interest are not admissible in evidence under Section 790, L. O. L.

### Evidence—Admissibility—Receipts—Hearsay.

12. Receipts of third parties constitute hearsay and are not to be received in evidence.

### Mortgages—Rights of Mortgagee—Reimbursements for Repairs—Evidence.

13. In action to fix amount required to redeem a mortgage, a mortgagee in possession cannot recover for repairs, where the only evidence to show cost of such repairs consists of unverified statements taken from the books of the person who made the repairs, and has since died, and receipts signed by such deceased person.

### Appeal and Error—Review—Evidence Received Without Objection.

14. Error cannot be urged to admission of incompetent evidence received without objection.

### Mortgages—Foreclosure—Personal Decree.

15. In an action by heirs of mortgagor to have court determine amount required to redeem from mortgage, where the pleadings raised

no issue of any promissory note or other personal obligation of plaintiffs, a personal decree against plaintiffs for amount remaining due on mortgage is unwarranted and erroneous.

From Douglas: FRANK M. CALKINS, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a second appeal in a suit to compel a mortgagee in possession to account for the net income accruing from real property pledged for a debt and to allow the plaintiffs to redeem the same upon payment of what might be found due to the defendant. The instrument alleged to be a mortgage was in the form of a deed absolute upon its face, but was coupled with an agreement allowing the grantors to redeem the realty within a specified time upon the payment of a debt of $16,500 principal and interest thereon at 8 per cent per annum. At the first trial, the Circuit Court sustained the contention of the defendant that the deed was in fact absolute and passed the title to him beyond recall. That decision, however, was reversed in a well-considered opinion by Mr. Justice BEAN reported in 68 Or. 420 (136 Pac. 866), wherein it was determined that the instrument was indeed a mortgage owing to the provision for redemption and that an accounting should be had with leave to the plaintiffs to redeem. Upon its return to the Circuit Court the parties to the cause saw fit to file amended pleadings. The complaint before us at the present juncture declares in substance that on July 22, 1899, the defendant, as mortgagee, took possession of the premises described

"for the purpose of collecting the rents from said property and applying the same upon a mortgage indebtedness of $16,610 owing by the said Simon Caro and Isadore Caro to defendant, and has ever since

so remained in the possession of said property and collected the rents therefrom.''

Isadore Caro died July 16, 1900, and it is·stated that the plaintiffs except Simon Caro, are his only surviving relatives. It is averred that on or about January 1, 1910, the plaintiffs demanded a settlement and statement of account concerning the monetary matters between them and the defendant and that they offered to pay any balance thus found due him; that the latter refused to account; claimed to be the owner in fee simple of the realty in dispute and denied that the plaintiffs or any of them had any interest whatever therein. They charge that he has received as the rents, issues and profits of the real estate more than enough to pay his debt and all taxes thereon; and that ever since that date they have always been ready, able and willing to pay any amount found due to the defendant upon an accounting. The prayer is substantially for an accounting and redemption.

The answer denies the readiness or ability of the plaintiffs to pay the amount found due; or that the defendant has received sufficient to extinguish the debt; and avers that from the time he entered into possession until November 1, 1914, he has received from the rents, issues and profits of the land $34,484; that he has expended during the same time in taxes, repairs and improvements thereon the sum of $14,-969.89. Here follows the allegation concerning the nature of the indebtedness:

''That the principal sum due the defendant from the plaintiffs Simon Caro and his brother, the said Isadore Caro, since deceased, on the 1st day of August, 1899, was $16,610; that the interest accumulating and accruing on said principal sum from that date until the 1st day of November, 1914, aggregates a total sum of $19,980.34.''

He claims for his personal supervision of the property during his occupancy the sum of $1,830, and declares that after deducting the total amount of rents, issues and profits received from the property since August 1, 1899, there is due to him from the plaintiffs the full sum of $18,906.23. The prayer of the answer is for a foreclosure and sale by virtue of the instrument already declared to be a mortgage.

The reply traverses the answer wherever it conflicts with the complaint.

After a hearing the Circuit Court declared that the indebtedness of the plaintiffs to the defendant amounted to $9,901.57, rendered a personal decree against all of them for that amount with interest at the rate of 8 per cent per annum from the date of the decree and made that the basis allowing the plaintiffs to redeem, in default of which foreclosure and sale should follow. The plaintiffs appeal, claiming that the court erred in finding that there was due from them to the defendant any sum whatever, and that it was wrong in giving personal judgment against them. There was no appeal on behalf of the defendant.      MODIFIED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. James O. Watson* and *Mr. William W. Cardwell,* with an oral argument by *Mr. Watson.*

For respondent there was a brief over the names of *Mr. Dexter Rice* and *Mr. Oliver P. Coshow,* with an oral argument by *Mr. Rice.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The testimony on the accounting was taken November 27, 1914, and seems to have covered the contro-

versy to December 1st of that year. In this court the plaintiffs challenge the amount demanded by the defendant for his personal services in the management of the property while in his possession; the charge made for vaults erected in the building; the rate of interest allowed by the court in its computations; and some items for plumbing bills. While the mortgagee is in possession of mortgaged realty his attentions to the matter are in his own interest, and he cannot collect pay for services rendered for himself: *Turner* v. *Johnson,* 95 Mo. 431 (7 S. W. 570, 6 Am. St. Rep. 62); *Barnard* v. *Paterson,* 137 Mich. 633 (100 N. W. 893); *Clark* v. *Smith,* 1 N. J. Eq. 121.

2–4. On the subject of interest, the allegation of the amended complaint concludes the plaintiffs as to the rate. They say that they surrendered and the defendant took possession of the realty to apply the rents upon a mortgage indebtedness owing by plaintiffs to the defendant. The record discloses that an incident of this liability was interest thereon at the rate of 8 per cent per annum and, although nothing was said about a rate at the time the possession changed, yet it follows the original debt which remained the same. Therefore in our calculations the interest must be computed at 8 per cent. The Circuit Court decided that the demand for an accounting which was refused by the defendant on January 1, 1910, tolled the interest so that after that date the defendant was not entitled to that increase upon his debt. In view of the fact that he has not appealed from that ruling it is the law of the case and must control us in our allowances on that point, for it is settled in this state that when a litigant does not appeal from a decree of the trial court, there can be no modification of the same in his favor in this court:

*Shook* v. *Coholan,* 12 Or. 239 (6 Pac. 503); *Shirley* v. *Burch,* 16 Or. 83 (18 Pac. 351, 8 Am. St. Rep. 273); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Cooper* v. *Thomason,* 30 Or. 162 (45 Pac. 296); *Board of Regents* v. *Hutchinson,* 46 Or. 57 (78 Pac. 1028); *McCoy* v. *Crossfield,* 54 Or. 591 (104 Pac. 423); *Bank of Commerce* v. *Bertrum,* 55 Or. 349 (104 Pac. 963, 106 Pac. 444); *Flinn* v. *Vaughn,* 55 Or. 372 (106 Pac. 642). The principal of the debt in the beginning was $16,500. At the time the plaintiffs yielded possession, there was a month's interest due amounting to $110. The defendant is not entitled to interest upon the interest and hence computations must be based upon the principal sum of $16,500.

The most important item contested is the charge of $1,835 for vaults erected in the building. The testimony shows that involved in the transaction in controversy there was a dwelling-house as well as some business property which was occupied by a building devoted to stores on the ground floor. The upper part was used for a time for a Masonic hall. After that order left the premises the second floor was idle for a time and, the principal storeroom becoming vacant, the defendant leased it to an abstract company which required a fireproof vault. The defendant accordingly built one on the ground floor at an expense of $660. Later he secured the United States Land Office as a tenant for the upper story and for the convenience of that institution he tore out the first vault and used it with additional material to erect a two-story vault reaching from the basement through the first story to the room above. The testimony shows that there was no material increase in the net rental after the installation of these vaults. They were permanently built into the building and the plaintiffs contend that they

will substantially interfere with the use of the store
for general merchandise purposes because they are
practically in the middle of the rooms instead of at one
side.

5. The authorities are practically unanimous that as
a general rule, where the mortgagee takes possession
of realty without a foreclosure he cannot charge for
more than keeping the property in repair and is not
entitled to any reimbursement for permanent improve-
ments which he installs. The governing principle is
that although the mortgagee has taken possession, yet
the title has not passed and he is occupying another
man's land. He is in duty bound to keep the property in
as good condition as it was when he took it, but beyond
this he cannot go without the consent of the real owner
of the premises. The mortgagee has no more right to
dictate permanent improvements to the owner after
taking possession than he had before. If he desires to
close up the transaction and realize upon his loan, he
may foreclose his mortgage and sell the property. A
contrary holding under such circumstances would
mean that at his discretion a mortgagee can put im-
provements upon real estate to such an extent as to
render it impossible for the mortgagor to redeem.
His additions might vastly enlarge the value of the
land, but prevent redemption by the mortgagor for
want of funds to meet the increase though he might be
able to pay the original debt. It would practically de-
stroy the debtor's right of redemption but leave intact
the creditor's right to foreclose. The interests of the
mortgagee and mortgagor in the holdings are in a
sense correlative. If, while he is yet in possession,
the mortgagor adds permanent improvements to the
realty they become subject to the mortgage by opera-
tion of law and he can have no allowance therefor in

reduction of his indebtedness. The same rule works both ways so that if without the consent of the mortgagor the mortgagee in possession adds to the land permanent improvements as distinguished from mere repairs, he does so at his peril, and they follow the course of the title: *Raynor* v. *Drew*, 72 Cal. 307 (13 Pac. 866); *Moore* v. *Cable*, 1 Johns. Ch. (N. Y.) 385; *Clark* v. *Smith*, 1 N. J. Eq. 121; *Lynch* v. *Ryan*, 137 Wis. 13 (118 N. W. 174, 129 Am. St. Rep. 1040, 1043, and note); *Malone* v. *Roy*, 107 Cal. 518 (40 Pac. 1040); *Bradley* v. *Merrill*, 88 Me. 319 (34 Atl. 160); *Miller* v. *Curry*, 124 Ind. 48 (24 N. E. 219, 374); *White* v. *Atlas Lbr. Co.*, 49 Neb. 82 (68 N. W. 359); *Catterlin* v. *Armstrong*, 101 Ind. 258; *Horn* v. *Indianapolis Nat. Bank*, 125 Ind. 381 (25 N. E. 558, 21 Am. St. Rep. 231, 9 L. R. A. 676); *McAbee* v. *Harrison*, 50 S. C. 39 (27 S. E. 539); *Sposedo* v. *Merriman*, 111 Me. 530 (90 Atl. 387); *Froelich* v. *Swafford*, 33 S. D. 142 (144 N. W. 925). The situation is thus portrayed in *Kinkead* v. *Peet*, 153 Iowa, 199 (132 N. W. 1095), speaking of the mortgagee in possession:

"He was at liberty, of course, to wager the cost of the improvements upon his judgment of the outcome, but he could not impose upon plaintiff any obligation to make him whole in case he should lose."

There are many cases where there was a voidable foreclosure under which the mortgagee bought and took possession of the property. In such instances, if he has acted in good faith and has a right to believe that he is in very truth the actual owner of the fee-simple title, he may be entitled to his reasonable charges for permanent improvements which increase the value of the property. Instances of such cases are these: *Bacon* v. *Cottrell*, 13 Minn. 194 (Gil. 183); *Liskey* v. *Snyder*, 66 W. Va. 149 (66 S. E. 702); *Gres-*

*ham* v. *Ware*, 79 Ala. 192; *Whetstone* v. *McQueen*, 137 Ala. 301 (34 South. 229); *Howard* v. *Clark*, 72 Vt. 429 (48 Atl. 656).

6. In the instant case these latter authorities do not apply. The defendant had no right to suppose that he was the owner of the property in fee or that he was otherwise than a mortgagee in possession. His own answer in the original case routs him from that position for there he said in speaking of the matter in controversy:

"That, for the purpose of avoiding the additional expense and trouble of a foreclosure, it was mutually agreed by and between them the defendant and the said Caro Bros. that, in consideration of the said Caro Bros. executing and delivering unto defendant a good and sufficient warranty deed to the aforesaid premises, thereby saving the costs, and expenses of a foreclosure suit, defendant would extend the time for redemption on said mortgaged premises for a period of four years from said 22d day of July, 1895, and it was mutually agreed by and between the parties that if the plaintiff and said Isadore Caro, partners as Caro Bros., would pay to the defendant the full sum of $16,610, with interest thereon at the rate of 8 per cent together with all taxes assessed against said premises, within four years from said 22d day of July, 1895, then this defendant would reconvey said premises to said Caro Bros., and that said Caro Bros. might occupy said premises during said extension period and collect the rents from the subtenants, but if said Caro Bros. failed to pay the interest as aforesaid annually, or pay the entire sum of principal, interest, and taxes within four years, then they should surrender the possession thereof to defendant, and said contract should be null and void."

The defendant must have known that the instrument under which he took possession was a mortgage "for he himself hath said it."

Without variation from *Thompson* v. *Marshall,* 21 Or. 171 (27 Pac. 957), to the present time, the courts of this state have held that such an instrument is a mortgage whatever the parties themselves may have styled it. Wherever a conveyance is fettered with a condition allowing the grantor to redeem the premises, the stamp of "mortgage" is indelibly placed upon the transaction. It is said in Section 422, L. O. L.:

"A lien upon the real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the decree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money."

See, also, Section 335, L. O. L., declaring that:

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law."

7. This section is an emphasis of the principle that a mortgage does not convey title. The defendant cannot say that he was ignorant of the thoroughly established law of the state laid down in the original opinion in this suit and followed by the uniform line of decisions. The law imputes to him a knowledge that without foreclosure he could not acquire the title of the mortgagor. Indeed, the statute expressly requires foreclosure.

83 Or.—21

8, 9. It is true that it is competent for a mortgagor to convey his interest in the mortgaged realty to any one absolutely, and none the less to the mortgagee; but it must be by a deed executed with the statutory formalities and without any condition whatever permitting redemption. No such showing has been made in this case on behalf of the defendant in any respect whatever. By the consensus of authority, therefore, he was not a purchaser in good faith, but purely and simply a mortgagee in possession and, if he would acquire the title must either get an absolute conveyance from the mortgagor or proceed to foreclose his mortgage lien. We conclude, therefore, that the defendant is not entitled to recover anything for the permanent improvements mentioned.

The plumbing contested by the plaintiffs was said to have been done by one W. H. Carroll, who died before the trial. It appears in evidence that the defendant has about twenty buildings of different kinds in Roseburg, all of which required more or less plumbing from time to time. He testified that he kept no separate account for the buildings involved in this suit. He says he caused plumbing to be installed in those structures but he does not pretend to be able to give of his own knowledge its amount or value. The only attempt at proof on this point was the offer of a statement made from the decedent's books by his father who did not regularly keep them and only made an entry therein now and then at long intervals. The books themselves were not offered in evidence and are not before us. They were not authenticated by any one who kept them or had knowledge of their correctness. Under such circumstances even they would not be admissible in evidence in any event. Beyond that, it is said in Section 790, L. O. L.:

"The entries or other writings of a like character of a person deceased or without the state, made at or near the time of the transaction, and in a position to know the facts stated therein, may be read as primary evidence of the facts stated therein, in the following cases: (1) When the entry was made against the interest of the person making it; or (2) when it was made in a professional capacity, and in the ordinary course of professional conduct; or (3) when it was made in the performance of a duty specially enjoined by law."

10, 11. It is plain that the first instance is the only one possibly applicable in the present juncture, but in order to be admissible the entry must be made against the interest of the person making it. The charges made by Carroll, however, against Wollenberg would not be against the interest of the person making them, but rather in his favor; and hence the entries themselves would not be competent evidence under the statute. Much less would a mere unverified transcript of his books be admissible: *Harmon* v. *Decker,* 41 Or. 587 (68 Pac. 11, 1111, 93 Am. St. Rep. 748); *Manchester Assur. Co.* v. *Oregon Railroad Co.,* 46 Or. 162 (79 Pac. 60, 114 Am. St. Rep. 863, 69 L. R. A. 475); *Lintner* v. *Wiles,* 70 Or. 350 (141 Pac. 871); *Hoover* v. *Gehr,* 62 Pa. 136; *Robinson* v. *Dibble,* 17 Fla. 457.

12–14. In some instances there appear in the record what purport to be receipted bills from Carroll for some expenditures, but it is well settled that receipts of third parties constitute hearsay and are not to be received in evidence: *Ellison* v. *Albright,* 41 Neb. 93 (59 N. W. 703, 29 L. R. A. 737). The doctrine governing that matter is that the receipt of one not occupying any official relation to the transaction is, in the first place, a declaration not under the sanction of an oath, and second, that the person making it is not presented

for cross-examination by the adverse party. Receipts required by law, as for public taxes and the like, constitute a manifest exception to the rule. Under these principles, therefore, the defendant failed to prove his charges for plumbing performed by the deceased Carroll. There were other items of the same nature for work performed by another man, but his statement of the same was admitted without objection on the part of the plaintiffs and hence they must stand.

15. There is but little dispute about the receipts from the property and we find from a careful examination of the testimony and correction of mistakes in addition that the total income received from the mortgaged realty from August 1, 1899, to December 1, 1914, amounts to $34,952. The total disbursements allowed for the same period are $12,323.63. Under the principles of law which we believe are sustained by a great weight of authority and the evidence, we have rejected $2,636.21 of the defendant's claim for expenditures. Under the procedure approved in *Lynch* v. *Ryan,* 137 Wis. 13 (118 N. W. 174, 129 Am. St. Rep. 1040, 1043, and note), and other authorities we have computed the interest at 8 per cent per annum with yearly rests, applying, as partial payments, the net income of the property for each year, closing the calculation of interest at January 1, 1910, as that is the law of the case on account of the defendant not having appealed. The result is that the amount due January 1, 1910, was $14,810.52. From this we deduct the net returns accruing between that date and December 1, 1914, amounting to $7,586.35, leaving a balance then due in the sum of $7,224.17. This closes the account as of that date and owing to the length of time since then elapsing, amounting to more than two years it is neces-

sary that the case be returned to the Circuit Court with a decree as thus modified for a supplemental account bringing the transaction down to the date of the hearing. It was error in any event to render a personal decree against the heirs of Isadore Caro, deceased, for they never promised to pay anything. In the amended pleadings no mention is made of any promissory note or other personal obligation for the payment of the debt as described in Section 422, L. O. L.; and hence so far as the issues are concerned in their present form there is no data upon which a personal decree could be rendered against Simon Caro. Hence, on the principle that amended pleadings supersede and take the place of originals we must decline to order a personal decree against any of the plaintiffs. Owing to the probable wide margin of the value of the property over the amount required to redeem or for which a foreclosure may be ordered, this point is not of great importance but is decided according to the strict construction of the pleadings. The details of the calculation are not of general interest to the legal profession or to the public, and therefore cannot be inserted at length in the opinion.

Following the precedent of *Bickel* v. *Wessinger*, 58 Or. 98 (113 Pac. 34), the cause will be remanded to the Circuit Court for the supplemental accounting for receipts and expenditures accruing since December 1, 1914, and the settlement of the resulting balance. The court should then enter a decree to the effect that within a certain reasonable time to be fixed by it the plaintiffs may pay into court the balance thus ascertained with interest thereon at 8 per cent per annum from the date of the decree until paid; that within a certain further reasonable time appointed by the court, the defendant shall, by a good and sufficient deed exe-

cuted as required by law, convey the property in question to the plaintiffs and, finally, that in default of full payment by plaintiffs as thus permitted the property shall be sold as in ordinary foreclosure suits and the proceeds applied first to the expense of sale; next to the payment of what is found due to the defendant with interest as aforesaid and that the remainder be paid to the plaintiffs.

The decree of the Circuit Court will be modified as indicated, but otherwise affirmed, with costs and disbursements in favor of the plaintiffs.

MODIFIED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE MOORE concur.